# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### EUGENE DIVISION

| | | |
|---|---|---|
| **LISA D. LEE,** | ) | Case No. 6:12-cv-00084-SI |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **MICHAEL J. ASTRUE**, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Richard F. McGinty, McGinty & Belcher, P.O. Box 12806, Salem, Oregon 97309. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, Oregon 97204; Carol A. Hoch, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, Washington 98104. Attorneys for Defendant.

**SIMON, District Judge.**

Lisa Lee seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits. Because the Commissioner's decision is supported by substantial evidence, the decision is AFFIRMED.

## BACKGROUND

**I.      The Application**

Ms. Lee was born in 1955. Tr. 116. She has completed two masters degrees and has

worked as a social worker, educational assistant, and secretary. Tr. 153, 1324. She applied for

Disability Insurance Benefits on October 21, 2003, alleging a disability onset date of August 8,

2002. Tr. 116.  Ms. Lee alleges disability due to extreme pain and fatigue, myofascial pain

syndrome, left shoulder restricted range of motion, post-concussive brain disorder, neurological

disorder, attention deficit disorder, high blood pressure, anemia, depression, and back problems.

Tr. 135-135A. The Commissioner denied Ms. Lee's application initially and upon

reconsideration. Tr. 727. After holding a hearing on May 14, 2007, an Administrative Law Judge

("ALJ") denied her claim, but the Appeals Council remanded the case for a new hearing. Tr. 727,

735, 738. The Appeals Council also associated with her original application a subsequent

application for benefits that Ms. Lee filed on July 20, 2007. Tr. 18. A new ALJ held a video

hearing on December 10, 2009, and issued a decision denying Ms. Lee's application on January

8, 2010. Tr. 18, 36. Ms. Lee's subsequent request for review was denied by the Appeals Council

on December 9, 2011, making the ALJ's decision the final agency decision. Tr. 10. Ms. Lee now

seeks judicial review of that decision.

**II.     The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§ 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step

sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.   Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.   Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert,* 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## III.   The ALJ's Decision

At Step One, the ALJ found that Ms. Lee has not engaged in substantial gainful activity since August 8, 2002. Tr. 20. At Step Two, the ALJ found that Ms. Lee has the following severe impairments: "degenerative disc disease of the cervical spine, status post fusion in 1998;

OPINION AND ORDER, Page 4

myofascial pain syndrome; obesity; history of bilateral shoulder pain, status post left shoulder arthroscopy; attention deficit disorder; depression/dysthymia; [and] questionable somatoform disorder." Tr. 21. At Step Three, the ALJ found that these impairments, or any combination of them, do not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 23. In reaching this determination, the ALJ evaluated in particular Ms. Lee's mental impairments. Tr. 23-24.

The ALJ then assessed Ms. Lee's residual functional capacity ("RFC"). The ALJ found Ms. Lee to be not credible regarding the intensity, persistence, and limiting effects of her symptoms. Tr. 27. He also weighed the opinions of three examining physicians and three consulting physicians. Tr. 30-34. The ALJ found that Ms. Lee could perform light work as defined in the regulations, but with lifting, carrying, pushing and pulling limited to twenty pounds occasionally and ten pounds frequently; standing and walking limited to six hours out of the workday; and sitting limited to six hours out of the workday. The ALJ also found that Ms. Lee can only occasionally crawl and climb ladders, ropes, and scaffolds; that she can reach overhead occasionally with her left arm and frequently with her right arm; and that she is limited to simple, repetitive, one-to-three step tasks. Tr. 25.

Given this RFC, the ALJ found at Step Four that Ms. Lee cannot perform her past relevant work, which was semiskilled or skilled, because her RFC now limits her to unskilled labor. Tr. 34. Nonetheless, based on the testimony of a vocational expert ("VE"), the ALJ found at Step Five that jobs exist in the national economy for an individual with Ms. Lee's age, education, work experience, and RFC. Tr. 35-36. The ALJ therefore found that Ms. Lee is not disabled. Tr. 36.

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)) (internal quotations omitted). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*

**DISCUSSION**

Ms. Lee argues that the ALJ erroneously: (1) discounted her testimony; (2) discounted the opinions of examining physician John Cochran, Ph.D.; (3) discounted a portion of the opinion of examining physician Kurt Brewster, M.D.; and (4) relied on the testimony of a VE that conflicted with the *Dictionary of Occupational Titles*. Because substantial evidence in the record supports the ALJ's determination on each of these four points, the Court affirms the Commissioner's finding of no disability.

## I.    Ms. Lee's Credibility

Ms. Lee argues that the ALJ erred in discounting her testimony regarding the severity of her symptoms. Specifically, Ms. Lee argues that her possible somatoform disorder,[1] and not any lack of credibility, explains the absence of corroborating objective medical evidence for the degree of pain she alleges.

### A.    Legal Standard

The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

---

[1] Somatoform disorders involve "the presence of physical symptoms that suggest a general medical condition … and are not fully explained by a general medical condition, by the direct effects of a substance, or by another mental disorder…." Am. Pyschiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 485 (4th ed. text rev. 2000) ("*DSM-IV-TR*"). The ALJ found that Ms. Lee has "a possible somatoform disorder" and included a "questionable somatoform disorder" in his list of severe impairments. Tr. 21-22.

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

In assessing the claimant's credibility, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not

substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

      *B.    Application*

      The ALJ found that Ms. Lee's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but he also found that Ms. Lee's statements regarding the severity of those symptoms were not entirely credible. Tr. 27. Ms. Lee argues that the testimony of a claimant who suffers from a somatoform disorder cannot be discredited based on the absence of supporting objective medical evidence, as it is precisely that lack of medical evidence that defines a somatoform disorder. The Court need not resolve this issue, however, as long as substantial evidence otherwise supports the ALJ's credibility determination, in which case any error in relying on impermissible rationales would be harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *Carmickle v. Commissioner*, 533 F.3d 1155, 1162 (9th Cir. 2008). In his decision, the ALJ provided other, independently sufficient reasons for discounting Ms. Lee's testimony.

      The ALJ primarily relied on Ms. Lee's descriptions of her daily activities. *See* Tr. 27-28. An ALJ may draw an adverse credibility finding from inconsistencies between the alleged severity of the claimant's symptoms and her self-reported activities. *See Valentine v. Commissioner*, 574 F.3d 685, 693 (9th Cir. 2009); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). The ALJ found that Ms. Lee "has demonstrated abilities beyond her alleged limitations," both physical and mental. Tr. 27. In particular, the ALJ noted that Ms. Lee has advocated for herself, cares for her elderly mother, gardens, makes and sells scarves at a craft market, writes books, swims several days a week, practices the autoharp and writes music, spends a day or two a week organizing business records, and performs housework. Tr. 27-28.

The ALJ found that such activities demonstrate that Ms. Lee "is able to engage in activity that requires concentration, comprehension and planning abilities that she alleges she now lacks," and that "she is able to read, write and type more than she claims." Tr. 27. He also found that these activities conflicted with her reported symptoms of "depressed mood, fatigue, irritability and agitations." Tr. 28. The identified inconsistencies between Ms. Lee's symptom testimony and the range and extent of activities in which she engages constitute specific, clear and convincing reasons that support the ALJ's credibility determination. *See Orn*, 495 F.3d at 639.

In addition, the ALJ noted the conservative course of treatment pursued by Ms. Lee and recommended by her doctors. Tr. 27-28. *See Tommasetti*, 533 F.3d at 1039-40 (ALJ permissibly inferred lack of credibility as to severity of pain where claimant pursued and was prescribed only conservative treatments). Regarding Ms. Lee's mental impairments, the ALJ noted that she had received limited treatment and had only recently begun counseling. Tr. 28; *see Burch*, 400 F.3d at 681 ("The ALJ is permitted to consider lack of treatment in his credibility determination."). Regarding Ms. Lee's physical impairments, the ALJ stressed that Ms. Lee's doctors have not suggested additional surgeries, injections, or other more invasive treatment. Tr. 28. Instead, Ms. Lee's treatment has focused on physical therapy and common medications, including occasional narcotics. *Id.* Such a conservative course of treatment can indicate that the claimant's testimony regarding the severity of her symptoms may not be entirely credible. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999).

The ALJ also took into account Ms. Lee's statement to an examining doctor that she was "looking for a physician to state on record that she is unable to work." Tr. 27 (quoting Tr. 442). It is an ordinary technique of credibility evaluation to consider that such a statement reflects a

greater interest in secondary gain than in obtaining treatment for severe pain or disabling impairment.

In sum, the ALJ provided several clear and convincing reasons for finding Ms. Lee's statements regarding the severity of her symptoms to be not entirely credible. Even if one of the reasons relied upon by the ALJ were in error, any such error would be harmless because the remaining reasons, and thus the ALJ's ultimate credibility determination, were adequately supported by substantial evidence. *See Molina*, 674 F.3d at 1115; *Carmickle*, 533 F.3d at 1162.

## II.    Medical Evidence

Ms. Lee's medical record is extensive. The ALJ discussed at length the opinions of three examining physicians and three reviewing (non-examining) physicians. *See* Tr. 30-34. Ms. Lee argues that the ALJ erred in his consideration and treatment of the opinions of Dr. Cochran and Dr. Brewster, both of whom were examining physicians.

### A.  *Legal Standard*

The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians.  The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician over that of a non-examining physician. *Lester*, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific and legitimate reasons" for discrediting the examining physician's opinion. *Lester,* 81 F.3d at 830-31. Specific, legitimate reasons for rejecting a physician's opinion include its reliance on a claimant's discredited subjective complaints and inconsistency with medical records. *Tommasetti*, 533 F.3d at 1040.

The opinion of a non-examining physician is not, by itself, substantial evidence that justifies rejecting the opinion of a treating or an examining physician. *Lester*, 81 F.3d at 831. It may support such a rejection, however, when considered with other evidence. *See id.* The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *See Carmickle*, 533 F.3d at 1164.

B.    *Dr. Cochran*

Dr. Cochran evaluated Ms. Lee's psychological limitations in May 2007 and again in November 2009. He opined that Ms. Lee was moderately impaired in most areas of functioning. For the most part, the ALJ did not incorporate the severity of limitations identified by Dr. Cochran into his RFC finding. *Compare* Tr. 31-33 (discussing Cochran's opinions) *with* Tr. 34 (giving "the most weight" to the March 2004 opinion of a reviewing physician).

As a preliminary matter, the Court rejects Ms. Lee's argument that the ALJ erred by not stating explicitly how much "weight" the ALJ gave to Dr. Cochran's opinions. The ALJ

discussed Dr. Cochran's opinions at length and critiqued them in several respects. Although the ALJ never explicitly stated that he gave Dr. Cochran's opinions less weight than other medical opinions, that finding was clearly implied. Where the ALJ considers the relevant evidence and provides multiple reasons for discounting it, this Court will not reverse the ALJ's decision simply because the ALJ did not incant particular words. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

  Regarding the 2007 opinion, the ALJ found that Dr. Cochran's disability assessments were "in conflict with his observations during their interview about the claimant's memory and reported abilities[,] and [his] findings appear to accept the claimant's perceived limitations rather than assess the discrepancy." Tr. 32. Further, "[t]he narrative in support of [Dr. Cochran's] personality disorder diagnosis appeared to be stock language without an attempt to personalize it to the claimant." *Id.*

An ALJ may give a medical opinion less weight if it is inconsistent with the doctor's own clinical findings. *Tommasetti*, 533 F.3d at 1041. As the ALJ noted, "Dr. Cochran observed the claimant to be adequately groomed[,] … to have clear and articulate speech of normal volume and tempo[,] … [to be] well oriented[, and] appeared to have intact recent and remote memory and … adequate concentration to complete all the tasks presented." Tr. 31-32; *see also* Tr. 699 (2007 report). Yet Dr. Cochran opined that Ms. Lee would have difficulty adhering to basic standards of neatness and cleanliness, interacting appropriately with the general public, getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, and sustaining ordinary routine without special supervision. Tr. 713-714. Ms. Lee argues that the ALJ cherry-picked select facts from Dr. Cochran's evaluations, but the ALJ is entitled to assess

the evaluation as a whole based on internal inconsistencies and to give greater credence to the doctor's clinical observations than to his ultimate determination when the two conflict.

This is particularly true when the doctor has relied on the claimant's self-reported history and symptoms and the ALJ has found the claimant to be not credible. *See Tommasetti*, 533 F.3d at 1041 (an adverse credibility finding supports the rejection of a physician's opinion that is based primarily on the claimant's subjective complaints). In his evaluation, Dr. Cochran recounted Ms. Lee's descriptions of her own limitations at length. *See* Tr. 688-690. It was not error for the ALJ to discount Dr. Cochran's opinion to the extent that it relied more on Ms. Lee's statements regarding her limitations than on the doctor's own clinical observations.[2]

As Ms. Lee points out, Dr. Cochran also relied on the results of several psychological tests. He only incorporated into his report, however, generic narrative statements that "describe the implications of the test findings among people in general, and do not necessarily apply in all respects to the functioning of any one person." Tr. 700. Contrary to Ms. Lee's argument, the ALJ questioned not the *results* of these psychological tests, but the generic descriptions of what those results might mean in any given case. The ALJ did not err in discounting Dr. Cochran's opinion to the extent that it was based on generic descriptions that were not related back to Ms. Lee's own limitations.

Turning to the 2009 evaluation, the ALJ explained that "Dr. Cochran's assessment of the claimant's abilities is inconsistent with her reported functioning in caring both for herself and family members." Tr. 33. He also noted the evaluation "appears to be based on the claimant's

_____

[2] The Court notes that the ALJ did incorporate a portion of Dr. Cochran's opinion in the RFC by recognizing that Ms. Lee is limited "to simple, repetitive, one to three step tasks." Tr. 25.

OPINION AND ORDER, Page 14

self reports of symptoms and limited functioning which contrast with her otherwise reported activities." *Id.* Again, an ALJ may discount a medical opinion that is based on the self-reporting of a claimant found to be not credible, especially when that self-reporting conflicts with other evidence in the record. *See Tommasetti*, 533 F.3d at 1041.

For both the 2007 and 2009 evaluations, then, the ALJ provided specific and legitimate reasons for giving less weight to the opinion of Dr. Cochran. Ms. Lee may be correct that some of the ALJ's other rationales are not as legitimate. In particular, the Court agrees with Ms. Lee that her referral to Dr. Cochran by her own attorney rather than the Social Security Administration, as well as Dr. Cochran's payment for the report, are not legitimate reasons for discounting the doctor's opinion. *See* Tr. 33. Further, the Court is skeptical that the use by Dr. Cochran of a form other than that typically used for disability determinations "impacts the evidentiary value of such assessment." *See* Tr. 32. Any error in either regard, however, would be harmless. Given the legitimate reasons noted by the ALJ for discounting Dr. Cochran's opinions, the Court is satisfied that any such error would not have altered the ALJ's analysis or the ultimate outcome of Ms. Lee's claim. *See Molina*, 674 F.3d at 1115.

C. *Dr. Brewster*

The ALJ incorporated into his RFC finding the opinion of examining physician Dr. Brewster with one exception: the ALJ found Dr. Brewster's proposed "limit to occasional pushing and pulling … to be excessive," concluding instead that Ms. Lee's "shoulder and neck impairments are better accommodated" by the other limitations in the RFC regarding Ms. Lee's ability to lift, reach overhead, crawl, and climb. Tr. 31. The ALJ gave greater weight on the question of pushing and pulling to the opinion of a reviewing physician, Sharon Eder, M.D. *See*

Tr. 34, 382.[3] Ms. Lee argues this was error.

In considering Dr. Brewster's opinion, the ALJ listed remarks by Dr. Brewster that suggest Ms. Lee was not entirely credible in her responses during the examination. For example, contrary to her self-reporting of symptoms, Ms. Lee was observed to walk without a limp, to sit without shifting for ten minutes, and to transfer on and off the examining table without difficulty. Tr. 31. She reported being able to carry an eight-pound item like a gallon of milk more easily than a three-pound item like a telephone; as Dr. Brewster explained, "given persistent restrictions, one should have familiarity with whether [these items] could be lifted or not." Tr. 524. Dr. Brewster also noted that although Ms. Lee stated she could not carry a three-pound object more than ten percent of the time, she carried a purse that weighed four pounds. Tr. 31, 524. Dr. Brewster remarked that Ms. Lee has a "somewhat exaggerated pain response, even to light touch," and he concluded that he did "not find objective evidence to significantly limit the claimant to the degree she estimates." Tr. 524; *see also* Tr. 31. He suggested that "underlying psychological issues may impact her perception of pain and perception of function." Tr. 524; *see also* Tr. 31.

When a claimant is not entirely credible, the ALJ may disregard a medical opinion based "on subjective complaints and on testing within [the claimant's] control," particularly when the doctor's ability to observe the claimant is brief.[4] *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149

---

[3] The Court notes that Dr. Eder's evaluation preceded the examinations of both Dr. Cochran and Dr. Brewster, as well as a subsequent evaluation by Dr. Eder in which she assessed greater limitations. The ALJ explained his reliance on Dr. Eder's first evaluation by noting the lack of medical evidence of any decline in Ms. Lee's functioning over time that would justify additional limitations. Tr. 34. The Court is similarly aware of no such evidence, and Ms. Lee has not identified any.

[4] Dr. Brewster's examination of Ms. Lee lasted thirty-three minutes. Tr. 515.

(9th Cir. 2001); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (ALJ did not err in reasoning that because "a one-hour physical capacity evaluation relies almost entirely on subjective information, when a claimant exaggerates symptoms, the results cannot be valid"). This rationale was implicit in the ALJ's decision, in which the ALJ recited Dr. Brewster's skeptical remarks before discounting a limited portion of Dr. Brewster's opinion that conflicted with other medical evidence. *See* Tr. 31; *Magallanes*, 881 F.2d at 755 (reviewing court may draw specific and legitimate inferences from ALJ's decision regarding the ALJ's reasoning).

Ms. Lee also argues that the ALJ should have incorporated into the RFC additional functional limitations due to a somatoform disorder. In support, she points to Dr. Cochran's opinions and Dr. Brewster's reference to possible "underlying psychological issues" impairing Ms. Lee's perception of pain and function. The Court notes that Dr. Brewster did not opine that Ms. Lee has a somatoform disorder, and that Dr. Cochran's opinions, which identified a possible undifferentiated somatoform disorder or a conversion disorder, were permissibly discounted for the reasons stated above. Regardless, Ms. Lee has not identified any additional limitation that the ALJ should have included in the RFC on this basis. The Court therefore does not find legal error in the ALJ's decision.

The record in this case is substantial, and the ALJ is responsible for resolving conflicts among the medical evidence. *See Carmickle*, 533 F.3d at 1164. Ultimately, the ALJ based his RFC finding on Ms. Lee's "activities, including swimming and working part time, the lack of treating source opinions, the opinions of state agency consultants [i.e., reviewing physicians] and the credited portions of Dr. Brewster's opinion." Tr. 34. This is substantial evidence sufficient to support the ALJ's RFC finding.

### III.     Vocational Expert's Testimony

Finally, Ms. Lee argues that the ALJ erred by not identifying and resolving a conflict between the testimony of the VE and the *Dictionary of Occupational Titles* ("DOT"). The DOT is presumptively authoritative regarding job classifications, but that presumption is rebuttable. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). "[A]n ALJ may rely on expert testimony which *contradicts* the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Id.* (emphasis added). Thus, before he may rely on the VE's testimony, an ALJ "must first determine whether a conflict exists." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). In accordance with Social Security Ruling 00-4p, the ALJ must ask the VE if her testimony is consistent with the DOT. *Id.* at 1152-53. If "there is an apparent unresolved conflict between VE … evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict." SSR 00-4p, 2000 WL 1898704, at *2; *see also Massachi*, 486 F.3d at 1153-54.

At the December 2009 hearing, the ALJ did not ask the VE whether her testimony was consistent with the DOT. That omission was a procedural error. Such an error may be harmless, however, if there is no conflict between the VE's testimony and the DOT, "or if the vocational expert had provided sufficient support for her conclusion so as to justify any potential conflicts." *Massachi*, 486 F.3d at 1154 n.19. The VE provided no additional testimony at the hearing upon which the ALJ could have relied in resolving any conflict. The question, then, is whether there is an apparent conflict between the VE's testimony and the DOT.

The ALJ posed the correct hypothetical to the VE, which included the limitation of "reaching overhead … with the left upper extremity … occasionally, frequently with the right." Tr. 1324; *see also* Tr. 25 (ALJ's RFC finding). Based on this hypothetical, the VE identified

OPINION AND ORDER, Page 18

three occupations that Ms. Lee could perform given her RFC: Mail Clerk, *DOT* § 209.687-026, *available at* 1991 WL 671813; Office Helper, *DOT* § 239.567-010, *available at* 1991 WL 672232; and Assembler of Printed Products, *DOT* § 794.687-010, *available at* 1991 WL 681316. Tr. 1325. The first two occupations, according to the DOT, require "reaching" frequently, while the third requires "reaching" constantly. The *Selected Characteristics of Occupations*, a companion to the DOT, defines "reaching" to mean "extending hand(s) and arm(s) *in any direction*." *Selected Characteristics of Occupations*, app. C (1993) (emphasis added); *see also* SSR 85-15, *available at* 1985 WL 56857, at *7 (defining "reaching" as "extending the hands and arms in any direction"). The DOT does not further specify whether a particular occupation requires reaching overhead or requires reaching with both hands equally.

Ms. Lee argues that the DOT's lack of further specificity creates an apparent conflict with the VE's testimony that Ms. Lee would be able to perform these three jobs. According to Ms. Lee, because she cannot reach overhead with her left arm more than occasionally (which is less than frequently or constantly), the ALJ could not rely on the VE's testimony that Ms. Lee can perform jobs requiring frequent or constant reaching, at least absent further evidence to rebut the DOT's presumptive authority.

The courts are divided on the question of whether "reaching" in the DOT requires the ability to reach in all directions, or whether "reaching," "handling," or "fingering" in the DOT requires the ability to use both arms or hands, and there is no controlling precedent.[5] Without

---

[5] Some courts have held that a bilateral restriction on overhead reaching conflicts with a DOT job description requiring reaching generally. *See, e.g.*, *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006); *Padilla v. Astrue*, No. CV 12-1197, 2012 WL 4356150, at *4 (C.D. Cal. Sept. 21, 2012). On the other hand, some courts have concluded that there is no conflict in

attempting to resolve this division or state a general rule, the Court determines that there was no apparent conflict between the DOT and the VE's testimony in this particular case.

There is no *direct* conflict between the DOT and the VE's testimony. For the Court to find a conflict on these facts, it would have to read into the DOT's description of the mail clerk and office helper occupations a requirement of *overhead* reaching with *both* arms on a more-than-occasional basis (which the DOT defines as more than one-third of the time).[6] In this regard, the Court notes that the DOT's general descriptions for these occupations do not include work activities involving frequent bilateral overhead reaching.[7] The Ninth Circuit has held that

---

such situations. *See, e.g.*, *Segovia v. Astrue*, 226 F. App'x 801, 804 (10th Cir. 2007); *Hernandez v. Astrue*, No. CV 12-01009, 2012 WL 4840692, at * 1 (C.D. Cal. Sept. 4, 2012).

Similarly, some courts have held that a restriction on reaching by one arm conflicts with a DOT job description requiring reaching generally. *See, e.g.*, *Marquez v. Astrue*, No. CV-11-339, 2012 WL 3011778, at *2-3 (D. Ariz. May 2, 2012); *Meyer v. Astrue*, No. 1:09-cv-01448, 2010 WL 3943519, at *8 (E.D. Cal. Oct. 1, 2010). Again, other courts have concluded that there is no conflict in such situations. *See, e.g.*, *Carey v. Apfel*, 230 F.3d 131, 145-46 (5th Cir. 2000); *Palomares v. Astrue*, 887 F. Supp. 2d 906, 920 (N.D. Cal. 2012); *Valdez v. Astrue*, No. CV 10-01647, 2011 WL 3204447, at *1-2 (C.D. Cal. July 25, 2011).

[6] The third occupation, assembler of printed products, requires constant reaching. That restriction exceeds Ms. Lee's ability to reach *either* arm overhead. As most courts confronted with a bilateral overhead reaching limitation agree that such a limitation conflicts with a requirement for reaching generally, the Court has set aside this third occupation for purposes of its analysis. It notes that there is a sufficient number of jobs available in the national economy for the mail clerk and office helper occupations to support the ALJ's Step Five finding.

[7] The office helper occupation is described as follows:

Performs any combination of following duties in business office of commercial or industrial establishment: Furnishes workers with clerical supplies. Opens, sorts, and distributes incoming mail, and collects, seals, and stamps outgoing mail. Delivers oral or written messages. Collects and distributes paperwork, such as records or timecards, from one department to another. Marks, tabulates, and files articles and records. May use office equipment, such as envelope-sealing machine, letter opener, record shaver, stamping machine, and transcribing machine. May deliver items to other business establishments …. May specialize in delivering mail, messages, documents, and packages between departments of establishment and be designated

an ALJ must provide further explanation when the claimant's RFC "*contradicts*" or "*fails to comport with*" the DOT. *Pinto v. Massanari*, 249 F.3d 840, 846-47 (9th Cir. 2001) (emphasis added). Although there may be situations where a contradiction is not explicit, the potential conflict identified by Ms. Lee appears to be speculative at best. The Court also notes that Ms. Lee, who was represented by the same counsel before the ALJ, did not bring this issue to the ALJ's attention. Claimants who are represented by counsel must raise all issues and evidence at their administrative proceedings in order to preserve them, unless failure to excuse the waiver would result in manifest injustice. *Meanel*, 172 F.3d at 1115.

Because there is no apparent conflict between the VE's testimony and the DOT in this case, the ALJ's failure to inquire of the VE whether her testimony was consistent with the DOT was harmless error.[8] Given the testimony of the VE, there is sufficient evidence in the record to

---

Messenger, Office (clerical). May deliver stock certificates and bonds within and between stock brokerage offices and be designated Runner (financial).

*DOT* § 239.567-010, 1991 WL 672232. The mail clerk occupation is described as follows:

Sorts incoming mail for distribution and dispatches outgoing mail: Opens envelopes by hand or machine. Stamps date and time of receipt on incoming mail. Sorts mail according to destination and type, such as returned letters, adjustments, bills, orders, and payments. Readdresses undeliverable mail bearing incomplete or incorrect address. Examines outgoing mail for appearance and seals envelopes by hand or machine. Stamps outgoing mail by hand or with postage meter. May fold letters or circulars and insert in envelopes …. May distribute and collect mail. May weigh mail to determine that postage is correct. May keep record of registered mail. May address mail, using addressing machine …. May be designated according to type of mail handled as Mail Clerk, Bills (clerical).

*DOT* § 209.687-026, 1991 WL 671813.

[8] In its analysis of the facts of this case, the Court found helpful the reasoning of the Fifth Circuit in reaching a similar conclusion:

[W]e note that this case does not involve the type of direct and obvious conflict at issue when the vocational expert's characterization of the exertional or skill level required for a particular job is facially different from the exertional or skill level

support the ALJ's finding at Step Five and, therefore, his ultimate finding that Ms. Lee is not disabled.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED.

DATED this 28th day of March, 2013.

/s/  Michael H. Simon_____
Michael H. Simon
United States District Judge

---

provided for that job in the DOT. Neither does this case involve the less obvious conflict created when the vocational expert's testimony creates a conflict or discrepancy between the ALJ's determination of the claimant's residual functional capacity and the DOT job descriptions. … The conflict identified by Carey does not even become apparent until the further inference is made that the jobs require manual dexterity with, not one, but two hands. … As the facts of this case demonstrate, all kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation. Moreover, claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.

*Carey*, 230 F.3d at 145-47.